[No. 2767–2.   Division Two.   June 7, 1978.]

THE STATE OF WASHINGTON, *Respondent*, v. ANTHONY
BRADLEY, *Appellant.*

*Franklin D. Burgess* and *Tanner, McGavick, Felker, Fleming, Burgess & Lazares,* for appellant.

*Don Herron, Prosecuting Attorney, Joseph D. Mladinov, Senior Deputy,* and *Ellsworth Connelly, Deputy,* for respondent.

PEARSON, C.J.—Defendant was convicted of first–degree manslaughter, RCW 9A.32.060,[1] in the shooting death of Lemmie Brown, a used–car salesman, on November 24, 1976. The jury also found that defendant was armed with a firearm during the commission of the crime. RCW 9.41.025.[2] Brown died as the result of a fight with defendant when Brown tried to repossess defendant's automobile. Defendant contended Brown was the aggressor, forcing him to act in self–defense. On appeal, defendant argues that the trial court gave improper instructions on self–defense and the use of deadly force. He also challenges the trial court's decision to permit the jury to enter a special verdict concerning his use of a firearm. We affirm.

In fall 1976, defendant bought a car from Robert Erwin shortly before Erwin moved out of the Tacoma area. At the time Erwin sold the car, he was in default on his car payments to the car dealer, who had a security interest in the car. Lemmie Brown, a salesman for the car dealership and the person who had sold the car to Erwin, decided to repossess the car.

On November 24, the car was parked at the home of Oscar Bonds and defendant was inside watching television with Bonds. At approximately 1:30 a.m., Bonds heard his dog barking and went out to investigate. He saw someone drive defendant's car away and ran back to the house to inform defendant. Bonds and defendant then got into

---

[1]RCW 9A.32.060 states:

"(1) A person is guilty of manslaughter in the first degree when:

"(a) He recklessly causes the death of another person; or

"(b) He intentionally and unlawfully kills an unborn quick child by inflicting any injury upon the mother of such child.

"(2) Manslaughter in the first degree is a class B felony."

[2]RCW 9.41.025 provides in pertinent part:

"Any person who shall commit or attempt to commit any felony, or any misdemeanor or gross misdemeanor categorized herein as inherently dangerous, while armed with, or in the possession of any firearm, shall upon conviction, in addition to the penalty provided by statute for the crime committed without use or possession of a firearm, be imprisoned as herein provided:"

Bonds' car and set out in pursuit. After searching for several minutes, defendant spotted his car stalled on a freeway off ramp at south 74th Street and Interstate 5 in Tacoma. Bonds and he drove past the car and stopped some distance in front of it. The defendant got out and walked back to his car, where he found Lemmie Brown seated behind the wheel.

Defendant testified that when he approached the car, the door on the driver's side was open. He asked Brown, "what he was doing taking my car." Brown made some reply and reached toward his side as if he had a gun. Defendant kicked Brown and a fight started. Defendant could not recall much of what happened. He remembered wrestling with Brown and that Brown had a gun in his hand. As they grappled, the gun went off. Defendant stated that all of the shots were fired during the struggle for the gun.

Bonds, who was a witness for the State, gave a different account of the incident. He stated that when defendant approached Brown he yelled profanities at Brown and asked him if he had a gun. He then kicked Brown in the head or chest. Brown tried to slide across to the passenger's seat, but defendant reached in and pulled him out of the car. Bonds then saw a gun in Brown's hand and defendant lunging for it. During the struggle, a shot was fired, Brown fell to the ground, and defendant grabbed the gun from his hand. Brown got up and came at defendant as if "to put a bear hug on him." Bonds heard defendant say, "Stay back or I shoot." Then he heard two or three shots fired. Bonds was unable to describe the actions of either Brown or defendant when these shots occurred because he was driving away in his car at the time.

The pathologist who performed the autopsy on Brown testified that he found two bullet wounds in Brown's body, one in the front and one in the back. In his opinion the shot in the back caused Brown's death. He described Brown as being 5 feet, 9 inches tall, weighing 225 pounds, and obese. Brown was 53 years old. By comparison, defendant

was 19 years old, 6 feet, 1 inch tall, and weighed 195 to 200 pounds.

Defendant's first assignment of error concerns the burden of proof on the issue of self–defense. The trial court instructed the jury that:

When a defendant claims that he killed another in self–defense of his own person, the burden is upon the defendant to prove the homicide was done in self–defense. It is not necessary for the defendant to prove this to you beyond a reasonable doubt, nor by a preponderance of the evidence. The defendant sustains this burden of proof if from a consideration of all the evidence in the case you have a reasonable doubt as to whether the killing was done in self–defense.

Although defendant took no objection to this instruction at trial, he contends that he may challenge the instruction on appeal because it is unconstitutional under *State v. Roberts*, 88 Wn.2d 337, 562 P.2d 1259 (1977). *See State v. Peterson*, 73 Wn.2d 303, 438 P.2d 183 (1968).

As we have stated in recent decisions, *Roberts* does not apply to self–defense instructions in prosecutions for homicide and assault under the new criminal code. *State v. Bruce*, 19 Wn. App. 392, 576 P.2d 1324 (1978); *State v. Atkinson*, 19 Wn. App. 107, 575 P.2d 240 (1978). The definitions of these crimes in RCW Title 9A make it constitutionally permissible for the State to assign defendant the burden of persuasion on the matter of self–defense. *See Patterson v. New York*, 432 U.S. 197, 53 L. Ed. 2d 281, 97 S. Ct. 2319 (1977). While we do not necessarily approve the trial court's instruction, *see State v. Bruce, supra,* we hold that it is within the bounds of the state and federal constitutions. Therefore, we will not review its efficacy absent some objection at trial. *State v. Arndt*, 87 Wn.2d 374, 553 P.2d 1328 (1976).

Defendant next assigns error to the last paragraph of the trial court's instruction on the right to self–defense:

To justify a killing in self–defense, there must be, or reasonably appear to be, at or immediately before the killing some overt act, or some circumstances which

would reasonably indicate to the slayer that the deceased is, at the time, attempting to kill or inflict great bodily harm upon him.

The right of self–defense is given only in emergencies to enable persons who are attacked, and to whom it may reasonably appear that their lives are endangered or their bodies are in danger of great physical injury, to defend themselves. The right is limited to the emergency, and ends when the emergency ceases. The right is based upon what a reasonable man, having due regard for human life and safety, would do under similar circumstances.

*A killing is not justified when made for the purpose of avenging insults, abuse, or a previous assault which has ended, or for the purpose of settling an argument not involving physical safety.*

(Italics ours.) Defendant's objection to this instruction is based on *State v. Lewis,* 6 Wn. App. 38, 42, 491 P.2d 1062 (1971), wherein the court stated, "[W]e do not believe certain circumstances should be singled out and emphasized" in an instruction which tells the jury to consider what a reasonable person would have done under all the circumstances. *Cf. State v. Herman,* 11 Wn. App. 465, 471, 526 P.2d 1221 (1974).

We agree that a specific instruction, such as the one in question, should not be given when a general instruction adequately explains the law and the parties are able to argue their theories within the general instruction. *See Braden v. Rees,* 5 Wn. App. 106, 485 P.2d 995 (1971). *See also* WPIC 16.02, 11 Wash. Prac. 109 (1977). However, this instruction, unlike the instruction in *Lewis,* is not incorrect, contradictory, or confusing. While it may have been unnecessary or inadvisable, it was not prejudicial to the defendant. Therefore, it is not grounds for reversal. *State v. Agee,* 89 Wn.2d 416, 573 P.2d 355 (1977).

Defendant's third assignment of error is that the trial court inadequately defined the term "great personal injury" as used in the justifiable homicide statute.[3] The trial court gave the following definition:

---

[3]RCW 9A.16.050 states:

"Homicide is also justifiable when committed either:

The term "great personal injury" as used in these instructions refers to an injury of a graver and more serious nature than an ordinary hitting or striking with the fists or hands.

The court refused to include additional language suggested by the defendant: "an injury of such a nature as to produce severe pain, suffering or injury."

Although the language suggested by defendant has approval in the cases, *see, e.g., State v. Milbradt,* 68 Wn.2d 684, 686, 415 P.2d 2 (1966); *State v. Lewis, supra,* the language chosen by the trial court is also supported by case law. *State v. Bezemer,* 169 Wash. 559, 576-77, 14 P.2d 460 (1932). Therefore, we find no error in the instruction as given; however, we would commend the use of WPIC 2.04. *See* 11 Wash. Prac. 13 (1977).

The defendant's fourth assignment of error is that the trial court erred in giving the following instruction:

While a person is not bound to retreat from a place where he has a right to remain and may lawfully repel a threatened assault, and to that end may use force enough to repel the assailant, yet he has no right to repel the threatened assault with naked hands by the use of a deadly weapon in a deadly manner, unless he honestly believes and has reasonable grounds to believe that he is in imminent danger of death or great bodily harm.

The instruction was designed to tell the jury under what circumstances defendant had the right to use "a deadly weapon in a deadly manner." Defendant does not contend that this instruction was inaccurate, he simply contends that it was inappropriate considering the facts of this case. We hold that the instruction was appropriate in light of

---

"(1) In the lawful defense of the slayer, or his or her husband, wife, parent, child, brother, or sister, or of any other person in his presence or company, when there is reasonable ground to apprehend a design on the part of the person slain to commit a felony or to do some great personal injury to the slayer or to any such person, and there is imminent danger of such design being accomplished; or

"(2) In the actual resistance of an attempt to commit a felony upon the slayer, in his presence, or upon or in a dwelling, or other place of abode, in which he is."

Oscar Bonds' testimony that he saw defendant in possession of a gun and threatening the victim with it. *See State v. Elder,* 70 Wn.2d 414, 419, 423 P.2d 533 (1967).

Finally, the defendant argues that the jury should not have been instructed to render a special verdict on whether he was armed with a firearm at the time of the manslaughter. He gives two reasons: first, he states, without citing any authority, that RCW 9.41.025 is intended to apply only to persons who bring with them a firearm when they commit a felony; second, he repeats his assertion that there is no evidence to show that defendant was ever in possession of a firearm. We find that both arguments lack merit.

■ RCW 9.41.025 penalizes those who are "armed with, or in the possession of any firearm" while committing certain crimes regardless of when or how the firearm was obtained. It is immaterial whether defendant brought the firearm with him or wrestled it away from the victim. The State's evidence showed convincingly that defendant obtained sole possession of the gun during the scuffle and used it to commit manslaughter.

The judgment will be affirmed.

PETRIE and REED, JJ., concur.

Reconsideration denied July 3, 1978.

Review denied by Supreme Court November 17, 1978.