[No. 2997-2. Division Two. January 3, 1979.]

THE STATE OF WASHINGTON, *Respondent*, v. EDWARD LOPEZ KING, *Appellant*.

*Sinnitt, Teitge & Sinnitt* and *Carl D. Teitge,* for appellant.

*Don Herron, Prosecuting Attorney,* and *Joseph D. Mladinov, Senior Deputy,* for respondent.

REED, J.—Defendant Edward Lopez King challenges his conviction of second–degree murder. RCW 9A.32.050. We find no reversible error and affirm.

In March of 1977, defendant was living at the Majestic Hotel in Tacoma, Washington. Larry VanRite, the victim, and VanRite's girl friend, Cordelia Thomas, were also residents of the hotel. Defendant was acquainted with VanRite and Thomas, but had not spent very much time socializing with them. In fact, defendant's first extended contact with either of the two occurred on approximately March 16, when he permitted Thomas to hide in his room after she had been beaten by VanRite.

On the morning of March 20, VanRite began to drink. He and Thomas spent most of the day sleeping in their room between trips to various local taverns. At about 5:30 or 6 p.m., VanRite became belligerent and attempted to choke Thomas; he also inflicted a slight stab wound to her neck. Thomas fled the room and walked to her car where she planned to spend the night. After about an hour, she was spotted by defendant and a man known as Chico, who also lived at the Majestic. Thomas accompanied the two men to

a tavern for beer. The three talked about Thomas' situation; defendant gave her the key to his room and told her she could stay there. Thomas went back to the hotel and entered defendant's room. Defendant and Chico walked to another tavern.

Around 10 or 10:30 p.m., defendant returned to his room. VanRite appeared shortly thereafter, pounded on the door and demanded to speak with Thomas. Defendant said she wasn't there and told VanRite to leave. VanRite returned 45 minutes later and again asked to see Thomas. He left when defendant stated that Thomas was not in the room. Within a few moments, VanRite once again began to knock on defendant's door. This time VanRite was more persistent. Defendant told Thomas to hide in the closet while he took care of things. Defendant took a knife and replica flintlock pistol out of his suitcase. He stood behind the door to open it. At trial, defendant maintained that VanRite entered the room swinging a claw hammer. Defendant hit VanRite in the side of the head with the gun and stabbed him five times. The police were called by the night manager of the hotel who had come to defendant's room to investigate the strange noises. When the police arrived, they found VanRite's body lying against the far wall of the hallway in front of defendant's room. Defendant was arrested after he made several incriminating statements.

Trial was held in May of 1977. Defendant admitted knifing VanRite, but argued he was acting in self–defense. The jury found defendant guilty of second–degree murder. Defendant appeals.[1]

Defendant first contends the trial court erred in refusing to give his proposed instruction No. 22, which provides:

When a defendant claims that he killed another in self–defense of his own person or persons in his presence,

---

[1]Before this court had the opportunity to consider defendant's direct appeal, defendant filed a personal restraint petition pursuant to the provisions of RAP 16.3 *et seq.* For the convenience of the court and the parties, the two matters have been consolidated.

the burden is upon the State to prove beyond a reasonable doubt that there is an absence of self–defense.

■ Defendant cites *State v. Roberts,* 88 Wn.2d 337, 562 P.2d 1259 (1977), in support of his contention that the prosecution is required to prove the absence of self–defense in order to obtain a conviction. *Roberts* was decided under the "old" criminal code, which did make the absence of excuse or justification an element of the crimes of first– and second–degree murder. RCW 9.48.030, 9.48.040 (repealed). The current code does not define either degree of murder in this manner, and it is therefore not improper to place the burden of proving self–defense on the accused. *Patterson v. New York,* 432 U.S. 197, 53 L. Ed. 2d 281, 97 S. Ct. 2319 (1977); *State v. Bradley,* 20 Wn. App. 340, 581 P.2d 1053 (1978). *See also* RCW 9A.32.030, 9A.32.050. The trial court did not err in refusing to give defendant's proposed instruction.

Defendant next challenges the use of the trial court's instruction No. 34. This instruction states:

> One who is the aggressor or who provokes the altercation in which he killed the other person engaged in the conflict, cannot successfully invoke the right of self–defense to justify or excuse the homicide, unless he in good faith had first withdrawn from the combat at such a time and in such a manner as to have clearly apprised his adversary that he in good faith was desisting, or intended to desist, from further aggressive actions.
>
> If you find beyond a reasonable doubt that the defendant was the aggressor and that by his own acts and conduct he provoked or commenced the difficulty, then the plea of self–defense isn't available to him.

■ A review of the record convinces us that the instruction was appropriate in this case. Defendant's own testimony indicates he was prepared for a serious fight—he admitted having armed himself with two weapons and stated that he shielded himself behind the door as he opened it. In addition, several other facts indicate he was the aggressor: (1) the hammer, which defendant claimed VanRite was swinging, was found in VanRite's pocket with

the metal claw "down" and only the handle protruding; (2) a cigarette with a long ash was still held between the fingers of VanRite's left hand when the police examined the body at the scene; and (3) at trial Thomas testified that VanRite was left handed. We agree with defendant's contention that these facts do not mandate a finding that he was not acting in self-defense; however, that is not the test for use of a jury instruction. An instruction is proper if there is substantial evidence in the record to support its use. *Elmer v. Vanderford*, 74 Wn.2d 546, 445 P.2d 612 (1968); *State v. Moss*, 3 Wn. App. 780, 478 P.2d 249 (1970). There was no error in instructing the jury that the plea of self-defense is not available to one who was the aggressor in a fight.

■ We note that the second paragraph of this instruction improperly placed the burden of proving that defendant was not acting in self-defense on the State. *See State v. Bradley, supra.* However, as the error is favorable to the defendant, it must be deemed harmless. *State v. Young*, 87 Wn.2d 129, 550 P.2d 1 (1976).

In his pro se brief, defendant argues that the second paragraph of instruction No. 18 improperly shifted the burden of proof on the issue of intent and deprived him of his right to due process. The challenged portion of instruction No. 18 reads:

The law presumes that a person intends the ordinary, natural and probable consequences of his voluntary acts. *This is a disputable presumption and may be overcome by evidence to the contrary.*

(Italics ours.)

■ Although Washington courts often have sanctioned the use of a "natural and probable consequences" instruction, *State v. Kroll*, 87 Wn.2d 829, 558 P.2d 173 (1976); *State v. Louther*, 22 Wn.2d 497, 156 P.2d 672 (1945); *State v. Osborne*, 18 Wn. App. 318, 569 P.2d 1176 (1977), recently we expressed doubt concerning the advisability of using this type of charge. *State v. Vandiver*, 21 Wn. App. 269, 584 P.2d 978 (1978); *see also* WPIC 6.25, comment, 11

Wash. Prac. 84. Defendant contends that the problems inherent in using a natural and probable consequences instruction are magnified in this case by the inclusion of the italicized language, which he asserts could be interpreted as requiring him to disprove that he intended to kill VanRite. *See United States v. Barash*, 365 F.2d 395 (2d Cir. 1966). We disagree with defendant's analysis and find that a more reasonable reading of the second paragraph of instruction No. 18 is that it merely informs the jury of an inference, "permissive presumption," which can be drawn from the proven facts. *State v. Osborne, supra*; W. LaFave & A. Scott, *Criminal Law* § 28, at 203 (1972). As stated in *Osborne* at page 325:

> [Under this type of instruction] if it is proven beyond a reasonable doubt that the accused voluntarily committed an act, then the jury is allowed to determine what the natural and ordinary consequences of the proven act are, and they may infer that the accused intended those consequences. The fact presumed follows beyond a reasonable doubt from the proven fact. The burden of proof of an element of the crime is not shifted to the accused, and the trial court did not err in giving the instruction.

Even if we assume that defendant's interpretation of the italicized language is correct, we are convinced that any error incurred by the use of this instruction is harmless. The jury was given two general instructions regarding the State's burden of proving guilt beyond all reasonable doubt. In addition, it was informed of the elements of the crime of second–degree murder and told that the State must prove beyond all reasonable doubt the truth of each element. Finally, the first paragraph of instruction No. 18[2] quite

---

[2]The first paragraph of instruction No. 18 states:

"The intent with which an act is done is a mental process and as such generally remains hidden within the mind where it is conceived and is rarely, if ever, susceptible of proof by direct evidence, but must be inferred or gathered from outward manifestations by the words or acts of the party entertaining them, and the facts or circumstances surrounding or attendant upon the act with which it is charged to be connected."

clearly demonstrates that the "natural and probable consequences language" was merely intended to inform the jury of a permissible inference that could be drawn from evidence of the acts. Although we again wish to express our doubts as to the usefulness of *any* "natural and probable consequences" instruction, we find defendant was not prejudiced by the second paragraph of instruction No. 18.

Judgment affirmed.

PEARSON, C.J., and PETRIE, J., concur.

Reconsideration denied January 31, 1979.

Review granted by Supreme Court April 20, 1979.