[No. 46061.   En Banc.   August 30, 1979.]

THE STATE OF WASHINGTON, *Respondent,* v. EDWARD LOPEZ KING, *Petitioner.*

*Sinnitt, Teitge & Sinnitt* and *Carl D. Teitge,* for petitioner.

*Don Herron, Prosecuting Attorney,* and *Joseph D. Mladinov, Senior Deputy,* for respondent.

WILLIAMS, J.—Petitioner King seeks review of the Court of Appeals decision affirming his conviction for second–

degree murder.[1] *State v. King*, 22 Wn. App. 330, 589 P.2d 306 (1979). We affirm.

In March of 1977, King was living at the Majestic Hotel in Tacoma, Washington. Larry VanRite, the victim, and VanRite's girlfriend, Cordelia Thomas, were also residents of the hotel. Prior to the events leading to VanRite's death, King had been acquainted with him and Thomas, but had not spent much time socializing with them. On one previous occasion, King had permitted Thomas to hide in his room after she had been beaten by VanRite.

The record indicates that VanRite was an alcoholic who became angry and violent when intoxicated. On the morning of March 19, he began to drink and in the early evening he became belligerent and attempted to choke Thomas. During the altercation he also inflicted a slight stab wound to her neck. She fled the room and walked to her car where she planned to spend the night. King and another man happened to see her and at their invitation she accompanied them to a tavern for beer. The three discussed her situation after which King gave her the key to his room and told her she could stay there. She went back to the hotel and entered King's room. King joined her shortly thereafter.

After King arrived at his room, VanRite pounded on the door and demanded to speak with King. King said he needed to sleep and asked him to leave. VanRite returned 45 minutes later and said he was looking for Thomas. VanRite left again when King said that he needed to sleep. He returned shortly, however, pounded on the door, and insisted on entering the room. VanRite indicated that he knew Thomas was in the room. King told VanRite he would open the door in a minute.

---

[1] The relevant portion of the definition of murder in the second degree as defined in RCW 9A.32.050(1)(a) states as follows:

(1) A person is guilty of murder in the second degree when:

(a) With intent to cause the death of another person but without premeditation, he causes the death of such person or of a third person; . . .

King told Thomas to hide in the closet, which she did. He armed himself with a loaded replica flintlock pistol and placed a knife in his back pocket. He positioned himself behind the door and then opened it. VanRite entered and the altercation immediately ensued.

King maintains that VanRite entered the room swinging a claw hammer. King hit VanRite on the side of the head with the gun and stabbed him five times. He then pushed VanRite into the hallway and closed the door. King did not come out again until the police arrived to investigate.

VanRite's body was found lying in the hall near King's room. The hammer with the claw down and the handle protruding was found in his left pocket. Between the fingers of his left hand, a cigarette had burned down to a long ash. VanRite had been left–handed.

At trial, King admitted knifing VanRite, but argued he was acting in self–defense. He requested that the trial court give his proposed instruction No. 22 relating to self–defense, which provided:

> When a defendant claims that he killed another in self–defense of his own person or person in his presence the burden is upon the State to prove beyond a reasonable doubt that there is an absence of self–defense.

The trial court refused to give King's proposed instruction No. 22, although it did generally instruct the jury that the burden of proof regarding the crime charged lay with the State. Instead, the court gave instruction No. 20, which provided:

> To constitute the crime of murder in the second degree in the case before you, *it will be necessary for the State to satisfy you beyond a reasonable doubt* of the truth of each and all of the following elements:
>
> 1. That Larry VanRite was killed on or about the 20th day of March, 1977;
> 2. That the killing was accomplished by the defendant, Edward Lopez King;
> 3. That the killing took place in Pierce County, Washington;

4. That the killing, *not being either excusable or justifiable,* was done with the intent to cause the death of Larry VanRite but without premeditation.

(Italics ours.)

The court's instruction No. 29 to the jury provided:

The killing of a human being is justifiable when committed in the lawful defense of the slayer or of any other person in his presence or company, when there is reasonable ground to apprehend a design on the part of the person slaying to commit a felony or to do some great personal injury to the slayer, or to any person in his presence or company, and there is imminent danger of such design being accomplished; or in the actual resistance of an attempt to commit a felony upon the slayer, in his presence, or in his dwelling, or other place of abode in which he is.

The jury found King guilty of second–degree murder. He appealed to Division Two of the Court of Appeals on a number of grounds, including the failure of the trial court to charge the jury with his proposed instruction No. 22. He argued that pursuant to *State v. Roberts,* 88 Wn.2d 337, 562 P.2d 1259 (1977), the State has the burden of proving that the homicide was not committed in self–defense and that he was entitled to an instruction to that effect. The Court of Appeals held that the trial court did not err in refusing to give this instruction. The court reasoned that the rule articulated in *Roberts* is inapplicable under the new criminal code. The Court of Appeals stated that:

*Roberts* was decided under the "old" criminal code, which did make the absence of excuse or justification an element of the crimes of first– and second–degree murder. RCW 9.48.030, 9.48.040 (repealed). The current code does not define either degree of murder in this manner, and it is therefore not improper to place the burden of proving self–defense on the accused. *Patterson v. New York,* 432 U.S. 197, 53 L. Ed. 2d 281, 97 S. Ct. 2319

(1977); *State v. Bradley,* 20 Wn. App. 340, 581 P.2d 1053 (1978). *See also* RCW 9A.32.030, 9A.32.050.

*State v. King, supra* at 333.[2]

Implicit in the Court of Appeals ruling are two determinations. One is that the State has placed the burden of proof on the defendant by removing the words "unless it is excusable or justifiable" from the definition of second-degree murder under the new criminal code. The second determination implied in the Court of Appeals ruling is that the State may constitutionally shift to the defendant the burden of proving self-defense pursuant to *Patterson v. New York,* 432 U.S. 197, 53 L. Ed. 2d 281, 97 S. Ct. 2319 (1977).

King petitioned for review of that decision. Review was granted.

King urges that even under the new criminal code, the State still has the burden of proving the defendant did not act in self-defense. Assuming arguendo that his analysis of the criminal code is correct, we believe the record indicates that he was not prejudiced by the court's failure to give his proposed instruction No. 22.

Instruction No. 20, which was proposed to the court by both parties, instructed the jury that the State had the burden of proving "all of the following elements". One of the elements set forth by the instruction was:

4. That the killing, *not being either excusable or justifiable,* was done with the intent to cause the death of Larry VanRite but without premeditation.

(Italics ours.)

---

[2]Under the "old" criminal code, murder in the second degree was defined in RCW 9.48.040 (repealed by Laws of 1975, 1st Ex. Sess., ch. 260, § 9A.92.010, p. 858). The relevant portion of that statute provided:

The killing of a human being, *unless it is excusable or justifiable,* is murder in the second degree when—

1. Committed with a design to effect the death of the person killed or of another, but without premeditation; . . .

(Italics ours.) Laws of 1909, ch. 249, § 141, p. 930.

The court's instruction thus made "not being either excusable or justifiable" an element of the crime on which the state had the burden of proof. Additionally, the court instructed in instruction No. 29 that a homicide is justifiable when committed in self–defense.

■ It is axiomatic that instructions must be read as a whole. *State v. Foster,* 91 Wn.2d 466, 589 P.2d 789 (1979); *State v. Dana,* 73 Wn.2d 533, 439 P.2d 403 (1968). Instructions are sufficient if they permit counsel to satisfactorily argue his or her theory of the case to the jury. *State v. Foster, supra; State v. Dana, supra.* When viewed together, as instructions must be, we believe that instructions Nos. 20 and 29 allocated to the State the burden of proof on the issue of self–defense and sufficiently permitted King to argue his theory of the case, *i.e.,* that the State had not sustained the burden of proving beyond a reasonable doubt that the homicide was not committed in self–defense.

Because we find that the court's instruction sufficiently permitted King to argue his theory of the case, we do not review the Court of Appeals determinations that the State has placed the burden of proving self–defense on the defendant by removing the words "unless it is excusable or justifiable" from the definition of second–degree murder under the new criminal code and that the State may properly do so under *Patterson.*[3]

---

[3]Because we do not reach this issue in the present opinion, we need not address the issues raised in *State v. Bradley,* 20 Wn. App. 340, 581 P.2d 1053 (1978). We note, however, that the rule of *Patterson v. New York,* 432 U.S. 197, 53 L. Ed. 2d 281, 97 S. Ct. 2319 (1977), may not be applicable in this case. In *Patterson,* the court upheld a New York requirement that the defendant affirmatively prove by a preponderance of the evidence "extreme emotional disturbance" as a means to *mitigate* his culpability for unlawful homicide. The court stated, at page 206, that: "It is plain enough that if the intentional killing is shown, the State intends to deal with the defendant as a murderer unless he demonstrates the mitigating circumstances." It cannot be said, however, that under Washington's statutory scheme the State intends to deal with the defendant as a murderer unless he shows self–defense, because under Washington law a killing done in self–defense is a *lawful act. See* RCW 9A.16.050. *See also Porter v. Leeke,* 457 F. Supp. 253 (D.S.C. 1978). Therefore, we perceive serious questions

Another issue raised. by defendant is whether the trial court erred in instructing the jury regarding the aggressor's duty to withdraw from combat. In instruction No. 34, the court instructed that:

One who is the aggressor or who provokes the altercation in which he killed the other person engaged in the conflict, cannot successfully invoke the right of self–defense to justify or excuse the homicide, unless he in good faith had first withdrawn from the combat at such a time and in such a manner as to have clearly apprised his adversary that he in good faith was desisting, or intended to desist, from further aggressive actions.

If you find beyond a reasonable doubt that the defendant was the aggressor and that by his own acts and conduct he provoked or commenced the difficulty, then the plea of self–defense isn't available to him.

King contends that the trial court erroneously instructed the jury regarding the aggressor's duty to withdraw from combat. He argues that this instruction should not have been given because there was no evidence that King was the aggressor. He is correct in his assertion that an instruction should not be submitted on issues of fact when they are unsupported by the evidence. *See State v. Robinson*, 76 Wn.2d 218, 455 P.2d 945 (1969). In this case, however, the record includes substantial evidence indicating that King was the aggressor in the incident resulting in VanRite's death.

The record indicates that: King armed himself with a loaded gun and a knife immediately prior to the incident; he stood behind the door while opening it, and during the altercation inflicted five stab wounds on VanRite while receiving no injuries himself; VanRite's body was found with a burned–out cigarette between the fingers of his left hand, which was his dominant hand; and the hammer which King alleges VanRite was swinging during the attack was found tucked in a pocket of VanRite's trousers.

---

regarding the appropriateness of applying the ruling in *Patterson* to the defense of self–defense as set forth in this state's criminal code.

Accordingly, we find this contention to be without merit. The conviction is affirmed.

UTTER, C.J., ROSELLINI, WRIGHT, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., and SOUKUP, J. Pro Tem., concur.