

This opinion was
filed for record
at 8 am on Oct 10, 2019

Susan L. Carlson
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 96217-1 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| DEAN MASAO IMOKAWA, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | Filed ___ OCT 1 0 2019 ___ |

JOHNSON, J.—This case stems from a fatal car accident where Dean Imokawa's truck collided with another vehicle during a lane change, propelling him into oncoming traffic and causing a collision with another vehicle. The State charged Imokawa with vehicular homicide and vehicular assault from the injuries resulting from the collision. The trial court judge denied Imokawa's request to include a specific jury instruction that the State must prove the absence of a superseding intervening cause beyond a reasonable doubt. A jury found Imokawa

guilty of vehicular homicide and vehicular assault. The Court of Appeals reversed, reasoning that the State has the burden to prove absence of a superseding intervening cause, the jury was not sufficiently instructed on this burden, and the error was not harmless. *State v. Imokawa*, 4 Wn. App. 2d 545, 422 P.3d 502 (2018), *review granted in part*, 192 Wn.2d 1016, 432 P.3d 111 (2019). The State petitioned for review, arguing that the jury was properly instructed on the burden of proof and that any error was harmless. We reverse the Court of Appeals. When looking at the instructions as a whole, the jury was adequately instructed as to the State's burden of proof on the issue of superseding intervening cause.

## FACTS AND PROCEDURAL HISTORY

On the morning of April 2, 2015, Imokawa was driving his truck on State Route (SR) 503, traveling north from Vancouver, Washington, toward Battle Ground, Washington. While traveling in the left, northbound lane, Imokawa came up behind a Land Rover driven by Nicholas Grier. Imokawa attempted to pass Grier on the right, but he clipped the front of the Land Rover while changing back from the right lane to the left lane. This collision caused Imokawa's truck to swerve west, over the median, and sideways into oncoming, southbound traffic. A southbound sport utility vehicle (SUV) hit Imokawa's truck; the driver of the SUV sustained severe injuries, and her passenger died in the hospital the next day. Out

of these events, the State charged Imokawa with vehicular homicide, vehicular assault, and reckless driving.

At trial there was conflicting testimony as to the facts immediately leading up to the collision and how the initial collision between Imokawa and Grier occurred. Grier testified that while he was driving northbound in the left lane, he noticed the truck when Imokawa "flashed his headlights at [him] and came up very close on [his] rear bumper." 2 Verbatim Report of Proceedings (VRP) at 357. He testified that he was "uncomfortable" because Imokawa's truck was within a couple feet of his Land Rover, so he "tapped [his] brakes and put [his] hand up" to wave him off as they slowed down for a stoplight. 2 VRP at 358. After the stoplight, Imokawa again came up close to Grier's bumper, backed off, and moved into the right lane. Grier testified that as they began going down a hill on SR 503, Imokawa accelerated past Grier, turned on his left-hand signal, and within seconds, came over into the left-hand lane, striking the front of Grier's Land Rover. Grier testified that he did not try to prevent Imokawa from making the lane change, he did not see how it would be possible for Imokawa to make the lane change given the space, and he did not speed up or react at all because of how quickly it happened.

Imokawa testified to a very different story. He stated that he first noticed Grier's Land Rover when he saw a different truck pass Grier on the right. He then

3

came up behind the Land Rover and turned on his headlights to get Grier's attention and to let him know he wanted to pass, but Grier did not move over into the right lane. He testified that as they came up to an intersection, he "backed off," but Grier remained in the left lane. 4 VRP at 659. Imokawa then came up right behind the Land Rover again, and Grier "slammed on his brakes" and "brake checked" Imokawa. 4 VRP at 659. Imokawa then backed off again and moved into the right lane to pass Grier on the right. He testified that once he moved over, he put on his left-hand signal, accelerated to pass Grier, and checked his mirrors to make sure there was enough room to pass Grier. He claimed that when he began to make the lane change, Grier sped up to cut him off and hit him, propelling him into oncoming traffic.

After testimony was completed, the parties discussed the jury instructions, specifically focusing on the instructions for proximate cause and superseding intervening cause. The main disagreement was whether the State bears the burden to prove the absence of a superseding intervening cause beyond a reasonable doubt or whether the defendant bears the burden of proving there was a superseding intervening cause, and how the jury must be instructed on that issue.

Imokawa proposed that Washington Pattern Jury Instructions: Criminal 90.08, which defines the interplay of proximate cause and superseding intervening cause, be modified to include language that read,

4

The State has the burden of proving beyond a reasonable doubt both (1) that conduct by the defendant was a proximate cause and, (2) that the conduct of Nicholas Grier did not constitute a superseding cause of the collision which resulted in the injuries and the death that occurred in this case.

*Compare* Clerk's Papers (CP) at 29, *with* 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 90.08, at 278 (4th ed. 2016) (WPIC). Imokawa also proposed adding "[t]hat . . . Nicholas Grier was not a superseding cause of the injuries sustained by [the victim]" to 11A WPIC 90.02 (elements of vehicular homicide) and 11A WPIC 91.02 (elements of vehicular assault). CP at 30; *see* CP at 33. The trial court declined to give these instructions and, instead, gave 11A WPIC 90.02, 11A WPIC 91.02, and 11A WPIC 90.08, as well as 11A WPIC 90.07, defining proximate cause.

The trial court also gave the standard instructions that included 11 WPIC 4.01, which defines reasonable doubt and informs the jury that the defendant is presumed innocent, that the burden is on the State to prove every element of the crimes beyond a reasonable doubt, and that the defendant has no burden to prove reasonable doubt. *See* 11 WPIC 4.01, at 93 (4th ed. 2016).

The jury found Imokawa guilty of vehicular homicide and vehicular assault, both based on the prong of "operating [a] motor vehicle with disregard for the safety of others." CP at 75, 77. The jury acquitted Imokawa of reckless driving. Imokawa appealed, alleging that the State has the burden to prove absence of a

superseding intervening cause, that the proof of this absence is an essential element of the crimes of vehicular homicide and vehicular assault, that the trial court erred because the jury was not adequately instructed on the burden and elements, and that the error was not harmless.[1] The Court of Appeals agreed that the State had the burden of proof, that the jury was not adequately instructed on that burden, and that the error was not harmless, but it disagreed that absence of a superseding intervening cause is an essential element of the crimes. *Imokawa*, 4 Wn. App. 2d 545. The State petitioned this court's review on the issue of whether the jury was adequately instructed that the State had the burden to prove the absence of a superseding intervening cause and, if they were not, whether the error was harmless.

## ANALYSIS

The due process clause of the Fourteenth Amendment to the United States Constitution requires that jury instructions adequately convey to the jury that the State bears the burden of proving "every element of the crime charged beyond a reasonable doubt." *State v. Brown*, 147 Wn.2d 330, 339, 58 P.3d 889 (2002); *see also State v. Acosta*, 101 Wn.2d 612, 615, 683 P.2d 1069 (1984). When a

---

[1] Imokawa also challenged the sufficiency of the evidence, but the Court of Appeals found the evidence sufficient. *Imokawa*, 4 Wn. App. 2d at 561. Imokawa asked us to review this issue, but we denied review.

6

defendant challenges the adequacy of specific jury instructions informing the jury of the State's burden of proof, we review the challenged instructions de novo in the context of the instructions as a whole. *State v. Bennett*, 161 Wn.2d 303, 307, 165 P.3d 1241 (2007). "Instructions satisfy the requirement of a fair trial when, taken as a whole, they properly inform the jury of the applicable law, are not misleading, and permit the defendant to argue his [or her] theory of the case." *State v. Tili*, 139 Wn.2d 107, 126, 985 P.2d 365 (1999). When instructing the jury that the State has the burden to disprove a defense, "a specific instruction is preferable, but failure to provide one is not reversible per se so long as the instructions, taken as a whole, make it clear that the State has the burden." *Acosta*, 101 Wn.2d at 621.

Generally, it is sufficient to explicitly instruct the jury that the State must prove beyond a reasonable doubt the statutory elements of the crime. RCW 46.61.520 defines the elements of vehicular homicide:

> (1) When the death of any person ensues within three years as a proximate result of injury proximately caused by the driving of any vehicle by any person, the driver is guilty of vehicular homicide if the driver was operating a motor vehicle:
> . . . .
> (c) With disregard for the safety of others.

While RCW 46.61.522 defines the elements of vehicular assault:

> (1) A person is guilty of vehicular assault if he or she operates or drives any vehicle:
> . . . .

(c) With disregard for the safety of others and causes substantial bodily harm to another.

In the present case, the jury was instructed on these elements through 11A WPIC 90.02 and 11A WPIC 91.02, on the definition of proximate cause through 11A WPIC 90.07, and on the interplay of proximate cause and superseding intervening cause through 11A WPIC 90.08.

Instruction 9, defining proximate cause for vehicular homicide, based on 11A WPIC 90.07, reads,

> To constitute vehicular homicide, there must be a causal connection between the death of a human being and the driving of a defendant so that the act done or omitted was a proximate cause of the resulting death.
> The term "proximate cause" means a cause which, in a direct sequence, unbroken by any new independent cause, produces the death, and without which the death would not have happened.
> There may be more than one proximate cause of a death.

CP at 56. Instruction 14 is almost identical, defining proximate cause for vehicular assault, but it refers to substantial bodily harm to a person instead of death. CP at 61.

Instruction 10, regarding superseding intervening cause for vehicular homicide, based on 11A WPIC 90.08, reads,

> If you are satisfied beyond a reasonable doubt that the driving of the defendant was a proximate cause of the death, it is not a defense that the conduct or driving of the deceased or another may also have been a proximate cause of the death.

However, if a proximate cause of the death was a new independent intervening act of the deceased or another which the defendant, in the exercise of ordinary care, should not reasonably have anticipated as likely to happen, the defendant's act is superseded by the intervening cause and is not a proximate cause of the death. An intervening cause is an action that actively operates to produce harm to another after the defendant's act has been committed.

However, if in the exercise of ordinary care, the defendant should reasonably have anticipated the intervening cause, that cause does not supersede the defendant's original act and the defendant's act is a proximate cause. It is not necessary that the sequence of events or the particular injury be foreseeable. It is only necessary that the death fall within the general field of danger which the defendant should have reasonably anticipated.

CP at 57. Instruction 15 is almost identical for superseding intervening cause and vehicular assault, but it replaces death with substantial bodily harm. CP at 62.

The arguments in this case parallel the arguments that have come before this court in the context of jury instructions and the State's burden to prove a defendant did not act in self-defense. In *State v. King*, 92 Wn.2d 541, 599 P.2d 522 (1979), we examined jury instructions regarding the burden of proof for self-defense in the context of homicide. The instructions at issue indicated that to convict, the State must prove "'[t]hat the killing, not being either excusable or justifiable, was done with the intent to cause the death,'" and instructed the jury that "homicide is justifiable when committed in self-defense." *King*, 92 Wn.2d at 544, 546 (emphasis omitted). We held that although the jury was not explicitly instructed on the State's burden to disprove self-defense, given that the instructions informed the jury that

the State had the burden to prove the homicide was not justified and that the defendant was able to argue his theory of the case (that the State could not prove beyond a reasonable doubt he did not act in self-defense), the instructions were adequate.

In *Acosta*, we again examined jury instructions and the burden of proof for self-defense. In that case, we reiterated that the State has the burden to prove lack of self-defense and that the jury must be instructed in a way that makes this burden clear. The instructions at issue indicated self-defense was a complete defense to the charged crime of assault. However, we reversed, holding that this alone was inadequate because "[u]nlike . . . *King* . . . , the jury was not told in the 'to convict' instruction that the force used must be unlawful, wrongful, or without justification or excuse." *Acosta*, 101 Wn.2d at 623. Further, the self-defense instruction was given after the description of the elements. We also noted that while in *State v. McCullum*, 98 Wn.2d 484, 656 P.2d 1064 (1983) (plurality opinion), we indicated a preference for a specific instruction indicating the State's burden of proof, it would *not* be a per se reversible error as long as the instructions make it clear that the State has the burden, such as the situation in *King*. Consistent with this interpretation of *McCullum*, we engaged in an analysis of the jury instructions as a whole.

It follows from *King* and *Acosta* that when the jury is instructed on a defense that necessarily negates an element listed in the to-convict instruction, a definitional instruction adequately informs the jury of the State's burden of proof, as the defense and the element are mutually exclusive. But, where the defense negates an aspect of the crime not contained in the to-convict instruction, then a definitional jury instruction is not sufficient. We use this same analysis to guide our decision in the present case.

In *State v. W.R.*, 181 Wn.2d 757, 336 P.3d 1134 (2014), we examined the affirmative defense of consent in the context of second degree rape and a jury instruction that specifically placed the burden to prove consent on the defendant. We held that consent negates the essential element of forcible compulsion, placing the burden on the State to prove beyond a reasonable doubt that the victim did not consent when the defendant raises the defense of consent. Prior to *W.R.*, the WPIC on the defense of consent read in pertinent part, "The defendant has the burden of proving that the [sexual intercourse] [sexual contact] was consensual by a preponderance of the evidence." 11 WPIC 18.25, at 288 (3d ed. 2008) (brackets in original). This instruction was problematic in *W.R.*, as it explicitly shifted the burden to the defendant to prove consent. Although the holding in *W.R.* indicates this instruction is no longer proper, we also reasoned, "Because the focus is on forcible compulsion, jury instructions need *only* require the State to prove the

11

elements of the crime. *It is not necessary to add a new instruction on consent simply because evidence of consent is produced.*" *W.R.*, 181 Wn.2d at 767 n.3 (emphasis added). Thus, *W.R.* focuses on the instructional error that shifted the burden to the defendant, which was improper.

WPIC 18.25 has since been modified in light of *W.R.* to read, "Evidence of consent may be taken into consideration in determining whether the defendant used forcible compulsion to have [sexual intercourse] [sexual contact]." 11 WPIC 18.25, at 304 (4th ed. 2016) (brackets in original). Thus, *W.R.* teaches, and the new WPIC recognizes, that so long as the burden is not shifted to the defendant in the instructions, the jury need not be instructed as to the State's burden to prove absence of a defense; it need only be specifically instructed on the essential elements of the crime. In this case, the Court of Appeals correctly recognized that under the statutes, absence of a superseding intervening cause is not an element of vehicular homicide or vehicular assault. Although recognizing that absence of a superseding intervening cause is not an element, the Court of Appeals still reversed the conviction because the jury was not instructed on the burden of proof for the nonelement absence of a superseding intervening cause. This is not consistent with our jurisprudence.

Imokawa argues that *Acosta* holds that when the jury is not explicitly instructed that the State must prove absence of a defense but is instructed only on

the definition of the defense, then due process is violated. As stated above, in *Acosta*, we found *as a whole* the instructions did not properly inform the jury of the State's burden because self-defense negates unlawful force, and the jury was not instructed in the to-convict instruction that the force must be unlawful. This is different from the present case because the jury was instructed Imokawa's driving must be a proximate cause of the injuries and death, and if there was a superseding intervening cause, then Imokawa's driving was not a proximate cause of the injuries and death.

Imokawa also relies on *State v. Souther*, 100 Wn. App. 701, 998 P.2d 350 (2000), and *State v. Meekins*, 125 Wn. App. 390, 105 P.3d 420 (2005), but neither decided whether WPIC 90.08 properly instructs the jury on the law of superseding intervening cause. In *Souther*, the Court of Appeals did not decide if the jury instructions were improper but, instead, held any error would be harmless because there was no evidence of a superseding intervening cause. 100 Wn. App. at 710-11. Further, *Meekins* concerned contributory negligence and how the jury was improperly instructed that contributory negligence was not a defense to vehicular homicide and, thus, the defendant could not rely on the victim's actions as a superseding intervening cause. 125 Wn. App. at 400-01. *Meekins* is unpersuasive here as the jury *was* instructed that if there were a superseding intervening cause, then the defendant's conduct was not the proximate cause.

13

The State largely relies on *Bennett*, 161 Wn.2d 303, and the plain language of the jury instructions. In *Bennett*, we found that even though the instruction at issue on the burden of proof was problematic, it was constitutionally adequate. However, we still recommended courts use 11 WPIC 4.01 (instead of the instruction at issue) in the future. 161 Wn.2d at 317-18. Imokawa's jury was instructed with the 11 WPIC 4.01 on the burden of proof and the presumption of innocence.

The State also argues that the jury instructions, when viewed as a whole, explicitly stated that Imokawa had no burden of proof and that the State did have the burden of proof. We agree with the State.

The instructions given to the jury in this case are consistent with due process and contain the statutory definitions and elements of vehicular homicide and vehicular assault. The trial court did not need to explicitly instruct the jury that the State has the burden to prove absence of superseding intervening cause because, as instructed, proximate cause and presence of a superseding intervening cause are mutually exclusive. This means proof of proximate cause beyond a reasonable doubt *necessarily* proves absence of a superseding intervening cause. *See State v. Morgan*, 123 Wn. App. 810, 818, 99 P.3d 411 (2004) (the burden to prove absence of superseding intervening cause is "automatically assumed" by the State's burden of proof for proximate cause). As the above cases establish, in this case, the jury's

verdict establishes that the State satisfied its burden to prove all elements of the crime, including that the defendant proximately caused the accident and the resulting injuries and death. Further, as instructed by 11A WPIC 90.07, the State did not need to prove that the other driver's conduct was not a proximate cause, as the jury was properly instructed there could be more than one proximate cause of injury and death. The State needed to prove only that the other driver's conduct was not a superseding intervening cause. The instructions as a whole are a proper statement of the law, do not shift any burden to the defendant, and are not misleading. Therefore, they are constitutionally adequate.

Further, as instructed, Imokawa was fully able to argue his theory of the case. Recently, in *State v. Henderson*, 192 Wn.2d 508, 430 P.3d 637 (2018), we examined the trial court's failure to instruct the jury on excusable homicide in a prosecution for felony murder predicated on assault although it went directly to the defendant's defense that he accidentally shot and killed the victim and could not be convicted. After we examined the instructions in their entirety, we held that it was not error for the trial court to refuse to give an instruction on excusable homicide because the instructions "adequately told the jury the intent, conduct, and necessary lack of accident it must find beyond a reasonable doubt to convict." *Henderson*, 192 Wn.2d at 514. We reasoned that because Henderson was able to argue his theory of the case and the jury was properly instructed that the assault

15

must be intentional, the jury would have to acquit if they believed Henderson acted accidentally. *Henderson*, 192 Wn.2d at 515. The present case is very similar. Defense counsel spent much of his closing emphasizing and arguing that the other driver's conduct was a superseding intervening cause, and if the jury believed that the other driver was a superseding intervening cause, then proximate cause would not have been met.

When, as is the case here, a jury is instructed as to the statutory elements of a crime, that the State bears the burden of proving all elements beyond a reasonable doubt, and that the defendant has no burden of proof, the instructions as a whole are constitutionally adequate and do not violate due process.

## CONCLUSION

We reverse the Court of Appeals. The jury was properly instructed as to the State's burden to prove the statutory elements and as to the definitions of proximate cause and superseding intervening cause, and the court gave no

instruction that would place any burden of proof on the defendant.

WE CONCUR:

No. 96217-1

MADSEN, J. (dissenting)—In a criminal trial, the State bears the burden of proving a charged offense beyond a reasonable doubt. U.S. CONST. amend. XIV, § 1; *State v. W.R.*, 181 Wn.2d 757, 761-62, 336 P.3d 1134 (2014). This burden includes proving the absence of an intervening superseding cause. *See State v. Acosta*, 101 Wn.2d 612, 616, 683 P.2d 1069 (1984). Jury instructions must unambiguously communicate that this burden rests on the State. *See id.* at 621.

Such unambiguous communication did not occur here. The jury instructions given were unclear, discussing proximate and intervening causes solely in terms of the defendant. These instructions could have led a reasonable juror to think that it was the *defendant's* burden to prove the existence of an intervening superseding cause. While the jury instructions communicated the State's ultimate burden—to prove its case beyond a reasonable doubt—this remote goal did not cure the confusion created by unclear instructions on intervening superseding cause. Because the instructions as a whole did not sufficiently instruct the jury on the State's burden, the trial court erred. This error was not harmless. Accordingly, I respectfully dissent.

## Discussion

The State must prove "'beyond a reasonable doubt . . . every fact necessary to constitute the crime with which [a defendant] is charged.'" *W.R.*, 181 Wn.2d at 762

(alterations in original) (quoting *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970)). However, the legislature does not violate due process when it requires a defendant prove an affirmative defense when that defense "'excuse[s] conduct that would otherwise be punishable.'" *Smith v. United States*, 568 U.S. 106, 110, 133 S. Ct. 714, 184 L. Ed. 2d 570 (2013) (quoting *Dixon v. United States*, 548 U.S. 1, 6, 126 S. Ct. 2437, 165 L. Ed. 2d 299 (2006)). But when a defense negates an element of the offense, it is not a true affirmative defense, and the legislature may not place the burden of proving the defense on the defendant. *W.R.*, 181 Wn.2d at 762. Thus, the State must prove the absence of the defense to sufficiently meet its burden of proof. *Acosta*, 101 Wn.2d at 616.

When considering the sufficiency of jury instructions, we look to whether the "'instructions, taken as a whole, adequately informed the jury that [the] prosecution's burden of proof beyond a reasonable doubt applied to defendant's [defense].'" *Id.* at 621 (emphasis omitted) (quoting *United States v. Corrigan*, 548 F.2d 879, 882 (10th Cir. 1977)). While failing to provide a burden of proof instruction is not per se reversible error, doing so would "avoid any confusion by the jury on burdens of proof." *State v. McCullum*, 98 Wn.2d 484, 499, 656 P.2d 1064 (1983) (plurality opinion). "The jury should be informed in some unambiguous way that the State must prove absence of [a superseding intervening cause] beyond a reasonable doubt." *Acosta*, 101 Wn.2d at 621.

2

Here, the majority argues that because the proximate cause instructions encompassed superseding intervening cause, as a whole, the jury was properly instructed on the State's burden to prove the absence of a superseding intervening cause. I disagree.

The instruction defining proximate causes states:

> To constitute vehicular homicide, there must be a causal connection between the death of a human being and the driving of a defendant so that the act done or omitted was a proximate cause of the resulting death.
> The term "proximate cause" means a cause which, in a direct sequence, unbroken by any new independent cause, produces the death, and without which the death would not have happened.
> There may be more than one proximate cause of a death.

Clerk's Papers (CP) at 56 (Instr. 9). The jury was then instructed:

> If you are satisfied beyond a reasonable doubt that the *driving of the defendant* was a proximate cause of the death, it is not a defense that the conduct or driving of the deceased or another may also have been a proximate cause of the death.
> However, if a proximate cause of the death was a new independent intervening act of the deceased or another which the *defendant*, in the exercise of ordinary care, should not reasonably have anticipated as likely to happen, *the defendant's act* is superseded by the intervening cause and is not a proximate cause of the death. An intervening cause is an action that actively operates to produce harm to another after the *defendant's act* has been committed.
> However, if in the exercise of ordinary care, the *defendant* should reasonably have anticipated the intervening cause, that cause does not supersede the defendant's original act and the defendant's act is a proximate cause. It is not necessary that the sequence of events or the particular injury be foreseeable.

*Id.* at 57 (Instr. 10) (emphasis added).

These instructions discuss only the defendant's actions and the actions that do not qualify as *affirmative* defenses ("it is not a defense that the conduct or driving of the

3

deceased or another may also have been a proximate cause of the death"). *Id.* The

instructions describe an intervening cause solely in terms of the *defendant*—not in terms

of the State's burden. In fact, neither the State nor its burden is mentioned. *Id.* at 56-57.

Instruction 10 specifically explains that an unforeseeable independent intervening act

supersedes the defendant's actions, thereby negating the defendant as a proximate cause.

*Id.* at 56-57. But a juror could easily read instruction 10 to mean that the defendant was

required to prove the existence of an intervening cause in order to show he or she was not

a proximate cause. This is particularly true of the final paragraph of the instruction,

which describes what does *not* constitute an adequate, affirmative showing by the

defendant to establish a superseding cause. Even if instruction 10 stated that the State

must prove its case beyond a reasonable doubt, this would not clarify whether it rests on

the defendant to prove or the State to disprove the existence of an intervening cause

because the instruction treats superseding cause as a separate inquiry from proximate

cause yet fails to assign the burden on that inquiry.[1]

The majority essentially relies on an implication: the mutually exclusive nature of

proximate cause and intervening cause implies the jury would recognize the State's

burden of proving the absence of an intervening cause. Majority at 14. The idea that

proving one element (proximate cause) necessarily disproves the opposite (superseding

---

[1] Neither instruction 3 nor the proximate cause instruction's use of "satisfied beyond a reasonable doubt" language adequately informs the jury of the State's burden of proof. Instruction 3 is the only express discussion of the State's burden of proof, CP at 50, and it asks too much of jurors to connect the phrase "beyond a reasonable doubt" to the State's burden absent any context, especially considering the complexity of proximate and intervening causes.

4

intervening cause) does not make the State's burden of proof for the latter manifestly

apparent. *See State v. Walden*, 131 Wn.2d 469, 473, 932 P.2d 1237 (1997) ("[r]ead as a

whole, the jury instructions must make the relevant legal standard manifestly apparent to

the average juror"). In fact, it makes that area of law more convoluted and leads to

greater confusion to the average reasonable juror.

Our goal in providing jury instructions is to permit the parties to argue their

respective theories of the case, to avoid misleading the jury, and to properly inform the

trier of fact on the applicable law when read as a whole. *See Havens v. C&D Plastics,

Inc.*, 124 Wn.2d 158, 165, 876 P.2d 435 (1994). Instructing a jury on the standard of

proof with respect to only proximate cause runs counter to those underlying policies of

jury instructions. Resorting to an inference from an instruction that a jury may not

necessarily reach is insufficient for purposes of due process.

The majority dismisses *W.R.* and *Acosta* as distinct from the instant case, but these

cases actually lay the groundwork for whether specific jury instructions are necessary to

properly inform the jury of applicable law. For example, in *W.R.*, at issue were jury

instructions that allocated the burden of proof of a defense to the defendant to prove a

sexual encounter was consensual. 181 Wn.2d at 761. We held that doing so violated due

process because the State has the burden to prove the crime charged. *Id.* at 763. "[T]he

State [must] prove 'beyond a reasonable doubt . . . every fact necessary to constitute the

crime with which [a defendant] is charged.'" *Id.* at 762 (quoting *Winship*, 397 U.S. at

364). The majority argues that our holding in *W.R.* means that "so long as the burden is

not shifted to the defendant in the instructions, the jury need not be instructed as to the State's burden to prove absence of a defense; it need only be specifically instructed on the essential elements of the crime." Majority at 12. But this is not what *W.R.* stands for. Rather, it stands for the proposition that when a defense negates an element, rather than acts as an affirmative defense, the burden of proof rests with the State. *See W.R.*, 181 Wn.2d at 765.

In *Acosta*, we held the jury instructions for self-defense were inadequate because when read as a whole, the "to convict" instruction did not inform the jury that the force used must be "unlawful, wrongful, or without justification or excuse." 101 Wn.2d at 623. While we prefer specific instructions on crucial areas of the law, such as the burden of proof for a negating defense, we recognized in *Acosta* that failing to provide that instruction is not per se reversible error. *Id.* at 621. However, we also said that if the instructions as a whole do not adequately address that which a specific instruction would, then due process is violated. *See id.* at 621-22.

For example, in *State v. Fischer*, the Court of Appeals considered whether a "necessity" instruction should have been presented to the jury for a second degree assault charge. 23 Wn. App. 756, 598 P.2d 742 (1979). That instruction read, "If at the time of the alleged assault defendant as a reasonably and ordinarily prudent man believed he and/or another were in danger of great bodily harm, he would have the right to resort to self-defense and his conduct is to be judged by the conditions appearing to him at that time, not by the conditions as they might appear when the threat of harm no longer

6

exists." *Id.* at 758 (emphasis omitted). The trial court rejected that instruction and

instead issued the following:

> It is a defense to a charge of Second Degree Assault that the force used was lawful as defined in this instruction.
> The use of force upon or toward the person of another is lawful when used by someone lawfully aiding a person about to be injured in preventing or attempting to prevent an offense against the person, and when the force is not more than is necessary.
> Necessary means that no reasonably effective alternative to the use of force appeared to exist and that the amount of force used was reasonable to effect the lawful purpose intended.

*Id.* at 758-59 (emphasis omitted). The trial court refused the proposed instruction

"because [the judge] was satisfied that the 'subjective' common-law standard was

'inherent' in the instruction given." *Id.* at 759. But the instruction is sufficient "only if it

makes the subjective standard manifestly apparent to the average juror." *Id.* "Therefore,

the court's instruction can stand only if it included the essential element that the person

using the force need only reasonably believe, in light of all the facts and circumstances

known to him, that he or another person is in danger." *Id.* Because the jury instruction

presented did not adequately relay this subjective standard to the jury, the Court of

Appeals reversed.

Similarly, "[j]ury instructions on self-defense must more than adequately convey

the law." *Walden*, 131 Wn.2d at 473 (citing *State v. LeFaber*, 128 Wn.2d 896, 900, 913

P.2d 369 (1996), *overruled in part by State v. O'Hara*, 167 Wn.2d 91, 217 P.3d 756

(2009)). When "[r]ead as a whole, the jury instructions must make the relevant legal

standard manifestly apparent to the average juror." *Id.* "'A jury instruction misstating

the law of self-defense amounts to an error of constitutional magnitude and is presumed prejudicial.'" *Id.* (quoting *LeFaber*, 128 Wn.2d at 900). The trial court issued the following jury instruction regarding self-defense:

> One has the right to use force only to the extent of what appears to be the apparent imminent danger at the time. However, when there is no reasonable ground for the person attacked or apparently under attack to believe that his person is in imminent danger of death or great bodily harm, and it appears to him that only an ordinary battery is all that is intended, he has no right to repel a threatened assault by the use of a deadly weapon in a deadly manner.
>
> Great bodily injury as used in this instruction means injury of a graver and more serious nature than an ordinary battery with a fist or pounding with the hand; it is an injury of such nature as to produce severe pain, suffering and injury.

*Id.* at 472. We took issue with the definition of great bodily injury, as it suggested an objective standard rather than a subjective one. Specifically, we noted, "By defining [great personal injury] to exclude ordinary batteries, a reasonable juror could read instruction 18 to prohibit consideration of the defendant's subjective impressions of all the facts and circumstance, i.e., whether the defendant reasonably believed the battery at issue would result in great personal injury." *Id.* at 477 (alteration in original). We reversed the trial court's decision because the definition was a "misstatement of the law." *Id.* at 478-79.

Because the instructions provided in this case could be read to shift the burden of proving an intervening cause to the defendant, they are misleading. *State v. Tili*, 139 Wn.2d 107, 126, 985 P.2d 365 (1999) (citing *State v. Theroff*, 95 Wn.2d 385, 389, 622

P.2d 1240 (1980)). Taken as a whole, the instructions did not unambiguously communicate the State's burden. *Acosta*, 101 Wn.2d at 621.

Moreover, I would hold that it was not harmless error to provide improper jury instructions. *State v. Brown*, 147 Wn.2d 330, 339, 58 P.3d 889 (2002). By failing to specifically instruct the jury on the State's burden of proof, there is a reasonable possibility that the jury failed to weigh the credibility of the defendant and the SUV (sport utility vehicle) driver's conflicting testimonies using the appropriate legal standard. Indeed, superseding intervening cause was a critical issue in this case, and both sides presented conflicting testimony on the matter. Failing to provide a jury instruction on superseding intervening cause taints an objective view of the matter and leaves one to question whether the jury properly considered all the evidence before it.

## Conclusion

An implication extrapolated from jury instructions does not adequately inform a trier of fact of the applicable law. Where taken as a whole, there is a reasonable possibility the jury may not have properly scrutinized the weight of the evidence as a result of the omission of a jury instruction, a specific jury instruction is necessary. In this case, the specific instruction on proximate cause, as well as the jury instructions generally, did not adequately inform the jury of the State's burden to prove absence of a superseding intervening cause, thereby violating due process. This was reversible error that was not harmless. I would hold a specific instruction was necessary and would affirm the Court of Appeals. I respectfully dissent.

Madsen, J.

Geo. McCloud, J.