# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 85047-4-I |
| Respondent | DIVISION ONE |
| BRUCE CLIVE GINGRICH, | UNPUBLISHED OPINION |
| Appellant | |

FELDMAN, J. — Bruce Clive Gingrich seeks reversal of his conviction and sentence for burglary in the first degree while armed with a deadly weapon. Because the facts of this case are known to the parties, we do not repeat them here except as relevant to the arguments below. We reverse in part and remand the matter with instructions that the judgment and sentence be amended to remedy a double jeopardy violation. In all other respects, we affirm.

## A. Sufficiency of the Evidence

Gingrich argues that there is insufficient evidence from which a jury could find him guilty of burglary in the first degree while armed with a deadly weapon. We disagree.

To decide whether sufficient evidence supports the jury's verdict, the court must determine "whether any rational fact finder could have found the elements of the crime beyond a reasonable doubt." *State v. Homan*, 181 Wn.2d 102, 105, 330

P.3d 182 (2014). Additionally, "all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Under RCW 9A.52.020(1), "[a] person is guilty of burglary in the first degree if, with intent to commit a crime against a person or property therein, he or she enters or remains unlawfully in a building and if, in entering or while in the building or in immediate flight therefrom, the actor or another participant in the crime (a) is armed with a deadly weapon, or (b) assaults any person." Thus, we must consider three elements: "intent to commit a crime against a person or property therein," "enters or remains unlawfully," and "armed with a deadly weapon."

A rational juror could properly find that Gingrich entered or remained unlawfully and did so "with intent to commit a crime against a person or property therein." *Id.* The evidence includes home security video footage showing that an individual who matched Gingrich's description: entered the residence where Jackie Taylor was sleeping at 12:31 a.m., stood over Taylor and did not wake her up while looking around the room, was wearing metal knuckles (as discussed below), and grabbed a brown leather purse before exiting the residence. Following these events, Taylor was visibly upset. And when police attempted to locate Gingrich, he was found hiding in the forest behind his residence. This is more than sufficient evidence from which a rational juror could have found both the entry and intent elements beyond a reasonable doubt.

The record also includes sufficient evidence from which a rational juror could find that Gingrich was "armed with a deadly weapon." Under Washington

2

law, the State must show that the defendant is "within proximity of an easily and readily available deadly weapon" and that a "nexus is established between the defendant, the weapon, and the crime." *State v. O'Neal*, 159 Wn. 2d 500, 503-04, 150 P.3d 1121 (2007). Here, Deputy Sheriff Benjamin Rodes testified that if metal knuckles are on someone's hand—as the home security video footage shows— they are immediately available for use and that he has seen only metal knuckles (a "deadly weapon" under RCW 9.95.040) used in criminal activity and had not seen knuckles made of non-metal material. Deputy Rodes also identified a "glint" in the home security video footage, which is additional evidence that the knuckles were made of metal. Gingrich's sufficiency of the evidence argument thus fails.

## B.     Prosecutorial Misconduct

Gingrich argues that he is entitled to a new trial because the prosecutor committed misconduct by misstating the role of a juror, misstating the law, arguing facts not in evidence, and arguing that defense counsel made "inaccurate" statements of the law. We disagree.

Significantly, Gingrich failed to object at trial to *any* of these purported instances of prosecutorial misconduct. Under controlling precedent, his failure to do so "constitutes a waiver of error unless the remark is so flagrant and ill intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury." *State v. Slater*, 197 Wn.2d 660, 681, 486 P.3d 873 (2021). Additionally, the "court considers the prosecutor's arguments in the context of the case, the arguments as a whole, the evidence presented, and the jury instructions." *Id*.

### 1. Misstating the role of a juror

Gingrich argues that the prosecutor misstated the role of the juror during voir dire when she told jurors "your sole duty as the trier of fact is to determine if the allegations the State has made . . . whether those allegations are true, whether they occurred." Properly viewed in context, here is what the prosecutor said:

> What we want to know, though, obviously, is if you are able to take the information that's provided to you in the court, you're going to get evidence, whether it is from the witness testimony or exhibits, evaluate that evidence, and then compare it to law that the court instructs you on. And your sole job as jurors, if you end up sitting in the jury panel, is to determine whether those acts occurred as they are alleged, *and whether they are consistent or inconsistent with the law as the court instructs you.*

(Emphasis added.) Contrary to Gingrich's assertion that the prosecutor misstated the role of the jury, the prosecutor was appropriately examining the jurors in voir dire to identify any biases.

Gingrich also argues that the prosecutor misstated the role of the juror during the State's closing argument when she told jurors that "she had met her burden if they could say 'Man, I really believe he did that,' . . . combined . . . with [the statement that the] jurors could convict even if they want[] more evidence." Properly viewed in context, here is what the prosecutor said:

> So if you're saying that to yourself at the end of the case, after fully, fairly evaluating the evidence and discussing with your peers, if you're saying, "Man, I really believe he did that," then I submit to you that I have met my burden, because you didn't know anything about the case, and somehow you have now arrived at a place where you believe he did the things that the State has accused him of and has charged him with. If you don't believe it, then you have a reasonable doubt . . .
> But I submit to you if you're saying you believe it but you'd like more evidence, that's a natural reaction. Everybody always wants more evidence . . . I submit to you it's not possible to have 100

percent certainty when you have 12 people sitting together in a room with a lifetime of different experiences . . . But unanimously, *if you have an abiding belief in the truth of the charge, then I submit I have met my burden beyond a reasonable doubt.*

(Emphasis added.) Gingrich also complains that the prosecutor told the jury that there was no numerical value or litmus test for reasonable doubt and that reasonable doubt is a "really high" standard.

The prosecutor's remarks, properly viewed in context, are consistent with 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 4.01 at 98 (5th ed. 2021) (WPIC), which likewise states: "If, from such consideration, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt." In *State v. Bennett*, 161 Wn.2d 303, 318, 165 P.3d 1241 (2007), the Supreme Court approved WPIC 4.01 as the required jury instruction regarding reasonable doubt. Here again, the prosecutor's remarks are not flagrant or ill intentioned nor did they cause an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury.

### 2. Misstating the law

Gingrich argues that the prosecutor improperly inverted the relationship between knowledge and intent—and thereby misstated the law—when she said, "[i]f you find that they're doing it knowingly, then they're acting with intent." Properly viewed in context, here is what the prosecutor said:

> Intent is what you think it is, doing something with intent, intentionally. If you find that they're doing it knowingly, then they're acting with intent. When acting with the objective or purpose to accomplish a result that constitutes a crime.

The prosecutor's remark is consistent with the applicable jury instruction, which

states that "[a] person acts with intent or intentionally when acting with the objective or purpose to accomplish a result that constitutes a crime." WPIC 10.01, at 225. Proof of knowledge tends to show objective or purpose, which in turn shows intent. There was no improper inversion here.

Gingrich also argues that the prosecutor misstated the law when she "told jurors they *could not consider* Taylor's absence during deliberations." Properly viewed in context, here is what the prosecutor said:

> You don't get -- I submit to you, you don't get to assume. You don't get to guess why Ms. Taylor is not present. Whether it's Ms. Taylor, whether it's the State, or whether it's the defendant, you don't get to guess. You don't get to consider that. *You get to consider the evidence that's in front of you, and that's what you get to consider. And I submit to you, based on all of the evidence that you have seen, all of these things are consistent with what the State has charged.*

(Emphasis added.) The prosecutor was telling jurors that they should decide the case based on the evidence before them. This, too, is consistent with the controlling jury instruction. WPIC 1.02, at 26. In this respect as well, the prosecutor's remarks are not flagrant or ill intentioned nor did they cause an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury.

### 3.    Arguing facts not in evidence

Gingrich next argues that the prosecutor improperly argued facts not in evidence when she stated during her closing argument, "I submit to you [Brown's] testimony is that he heard [Taylor] yelling about a purse" and "Ms. Taylor went directly to Mr. Gingrich's home and directly confronted him." "In closing argument the prosecuting attorney has wide latitude to argue reasonable inferences from the

evidence, including evidence respecting the credibility of witnesses." *State v. Thorgerson*, 172 Wn.2d 438, 448, 258 P.3d 43 (2011). The prosecutor here was arguing such reasonable inferences from the home security video footage, photographic evidence, and testimony at trial. Here again, Gingrich fails to establish that the prosecutor's remarks were so flagrant and ill intentioned that they caused an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury.

### 4. Arguing defense counsel made "inaccurate" statements of law

Gingrich argues that the prosecutor improperly argued that defense counsel had misstated the law regarding reasonable doubt. Viewed in context, here is what the prosecutor said:

> So when we talk about this, I want to be very clear, one of the things I said at the very beginning is that the jury instructions are the rule of the case. You are the triers of fact. So there may be times where myself or counsel misspeaks, and that -- I submit to you that is exactly what Mr. Hack did repeatedly. Absolutely, the jury instruction on reasonable doubt is the law of the case. The jury instruction is an abiding belief in the truth of the charge, 100 percent. Mr. Hack is inaccurate, and it is an inaccurate statement of the law to tell you that even if you have an abiding belief but you'd like more evidence, you have to find him not guilty. That is an inaccurate statement of the law.

While prosecutors can properly argue that the evidence does not support the defense's theory, they cannot "impugn the role or integrity of defense counsel." *State v. Lindsay*, 180 Wn.2d 423, 431-32, 326 P.3d 125 (2014). The prosecutor here appropriately responded to defense counsel's arguments and did not impugn the role or integrity of defense counsel. As before, the prosecutor's remarks are

not flagrant or ill intentioned nor did they cause an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury

### 5. Cumulative error

The cumulative error doctrine "requires reversal where a combination of . . . errors denies the defendant a fair trial." *State v. Ritchie*, 24 Wn. App. 2d 618, 644 n.9, 520 P.3d 1105, 1120 (2022), *review denied*, 526 P.3d 851 (1 Wn.3d 1006, 2023). But "where there are few or no errors, and the errors, if any, have little or no effect on the outcome of the trial, reversal is not required." *Id.* Having carefully reviewed each instance of alleged prosecutorial misconduct "in the context of the case, the arguments as a whole, the evidence presented, and the jury instructions" (*Slater*, 197 Wn.2d at 681), we find no cumulative error that would necessitate a new trial.

### C. Jury Instructions

Gingrich argues: "In its 'to convict' instructions, the court used two different standards telling jurors how to approach the evidence. For conviction, the standard for reviewing the evidence was less onerous than the standard for acquittal. This violated Mr. Gingrich's right to due process." Challenges to jury instructions are reviewed de novo. *State v. Imokawa*, 194 Wn.2d 391, 396, 450 P.3d 159 (2019). "Instructions satisfy the requirement of a fair trial when, taken as a whole, they properly inform the jury of the applicable law, [and] are not misleading . . ." *Id.* (quoting *State v. Tili*, 139 Wn.2d 107, 126, 985 P.2d 365 (1999)). Because the challenged instruction properly informs the jury of the applicable law, we reject Gingrich's argument.

The trial court's "to convict" instruction provides as follows:

> To convict the defendant of the crime of burglary in the first degree as charged in Count 1, each of the following elements of the crime must be proved beyond a reasonable doubt. That on or about December 11th, 2021, the defendant entered or remained unlawfully in a building; that the entering or remaining was with intent to commit a crime against a person or property therein; that in so entering or while in the building or in immediate flight from the building, the defendant was armed with a deadly weapon; and that any of these acts occurred in the State of Washington.
>
> If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty. On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

The Supreme Court approved this instruction in *Bennett*. 161 Wn.2d at 318. Contrary to Gingrich's argument, it does not provide inconsistent standards for conviction and acquittal. In both instances, the jury must consider the evidence and return a verdict based on that evidence. There was no due process violation.

## D.    Ineffective Assistance of Counsel

Gingrich asserts that his trial counsel provided ineffective assistance in two respects.  We disagree.

"Both the United States and Washington Constitutions guarantee a criminal defendant the right to effective assistance of counsel." *State v. Vazquez*, 198 Wn.2d 239, 247, 494 P.3d 424 (2021). "To demonstrate ineffective assistance of counsel, a defendant must make two showings: (1) defense counsel's representation was deficient, i.e., it fell below an objective standard of reasonableness based on consideration of all the circumstances; and (2) defense counsel's deficient representation prejudiced the defendant, i.e., there is a reasonable probability that, except for counsel's unprofessional errors, the result

of the proceeding would have been different." Id. at 247-48.

First, Gingrich argues that his trial counsel provided ineffective assistance by failing to object to the alleged instances of prosecutorial misconduct discussed in section B of this opinion. As section B shows, Gingrich has failed to establish prosecutorial misconduct. For much the same reasons, Gingrich also fails to show that his counsel's performance fell below an objective standard of reasonableness. Nor has he established "a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 248 (quoting *State v. Lopez*, 190 Wn.2d 104, 115, 410 P.3d 1117 (2018)).

Second, Gingrich argues that his trial counsel provided ineffective assistance by failing to request a missing witness instruction. This argument fails because a party is not entitled to a missing witness instruction if the absence of the witness can be reasonably explained. *See State v. Reed*, 168 Wn. App. 553, 571, 278 P.3d 203 (2012). Here, the explanation is that Taylor had failed to appear to testify despite the state's best efforts to procure her testimony. Thus, even if Gingrich's trial counsel had requested a missing witness instruction, the outcome of the proceedings would not have been any different. Gingrich's ineffective assistance arguments thus fail.

## E.    Offender Score Calculation

Gingrich argues that the trial court erred by sentencing him with an offender score of three. We disagree.

When determining offender scores for sentencing purposes, federal convictions "shall be classified according to the comparable offense definitions and

sentences provided by Washington law." RCW 9.94A.525(3). Although the State bears the burden of ensuring that the record supports the existence and classification of federal convictions, "we have stated a defendant's *affirmative acknowledgment* that his prior out-of-state and/or federal convictions are properly included in his offender score satisfies [Sentencing Reform Act] requirements." *State v. Ross*, 152 Wn.2d 220, 230, 95 P.3d 1225 (2004).

Gingrich and his counsel provided such an affirmative acknowledgment. The prosecutor prepared a statement of criminal history that included "Robbery . . . 1[,] while armed," in bold print. The document included an acknowledgment that "[t]he defendant and the defendant's attorney hereby stipulate that the above is a correct statement of the defendant's criminal history relevant to the determination of the defendant's offender score in the above-entitled cause." Both Gingrich and his attorney signed the acknowledgment.

Additionally, the offender score was also discussed at sentencing and Gingrich's counsel once again provided the required acknowledgement:

> THE COURT: Do you agree with the State that it's 55 to 65 months for the range?
>
> MR. HACK: Apparently, the robbery in the first degree in Nevada would -- would at least qualify. I don't think it would be a serious violent, but it would be a violent offense. So it would be a doubler [sic] as a class A. It does not wash out. We have the other PSP one, that was a class B. Mr. Gingrich has not gone ten full years in the community totally crime-free, so a class B would not also wash out. *So it appears to me that the State is correct that his score would be three*.

(Emphasis added.) Given Gingrich's "affirmative acknowledgment that his prior . . . federal conviction [is] properly included in his offender score" (*Ross*, 152 Wn.2d at 230), the trial court did not err in sentencing him with an offender score of three.

## F.     Double Jeopardy

Although Gingrich was charged with both burglary in the first degree while armed with a deadly weapon and residential burglary while armed with a deadly weapon, the trial court properly merged the charges as required to avoid a double jeopardy violation. *See State v. Turner*, 169 Wn.2d 448, 462 n.9, 238 P.3d 461 (2010) ("trial courts, where appropriate, are required to either merge convictions or enter judgment and sentence on only one of multiple convictions so as to avoid double jeopardy"). Yet as Gingrich notes, section 2.1 of the judgment and sentence indicates that he was convicted of both burglary in the first degree and residential burglary. Gingrich correctly argues, and the State concedes, that this violates Gingrich's double jeopardy rights. To remedy this violation, we remand the matter with instructions to remove all references to the residential burglary conviction in the judgment and sentence. In all other respects, we affirm.

Feldman, J.

WE CONCUR:

Birk, J.                                Mann, J.