[No. 6797–1. Division One. September 17, 1979.]

THE STATE OF WASHINGTON, *Respondent,* v. CLIFFORD ARGYLE STONE, *Appellant.*

*Edwards & Barbieri, Malcolm L. Edwards,* and *Murray B. Guterson,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Philip Y. Killien, Deputy,* for respondent.

WILLIAMS, J.—Clifford Argyle Stone was charged by an amended information with second–degree manslaughter. Trial to a jury resulted in a general verdict of guilty and a special verdict finding that Stone was armed with a deadly weapon and firearm. He appeals, assigning as error the trial court's refusal to give certain offered instructions.

The facts are that shortly after midnight on August 28, 1977, Stone, who was employed by a state political committee to manage its bingo parlor, was told by his son, Jeffrey, that he, the son, had just had an altercation with one Chris Becker at a Seattle tavern. The son reported that Becker was a violent person, had threatened him, and had taken his keys. Stone armed himself with a pistol for which he had a permit and left with his former wife for the tavern where Becker was employed to retrieve the keys. On the way he stopped at the bingo parlor to pick up a weighted nightstick.

Stone's version of the subsequent events is that he went to the tavern and told the bartender that he was looking for Becker and explained why. Without identifying himself, Becker approached him, stated that he knew where Becker lived, and would show Stone the way. As they left the tavern, Stone found out that the man was Becker and Becker then struck him. A scuffle ensued and Stone pulled his gun, aimed it at Becker, and threatened to shoot. Mrs. Stone, who was nearby, then sprayed tear gas in Becker's face. Becker returned to the tavern to wash while six or seven men came out of the tavern and formed a semicircle around Stone who backed away, but was grabbed from behind by Randy Lou West. Stone and West then struggled for a brief time before the gun went off, fatally wounding West. Stone testified that he did not pull the trigger, but that his gun "went off anyway."

Stone assigns error to the trial court's refusal to give four of his proposed instructions. The court instructed the jury in part as follows:

INSTRUCTION No. 4

A person commits the crime of manslaughter in the second degree when, with criminal negligence, he or she causes the death of another person.

INSTRUCTION No. 5

To convict the defendant of the crime of manslaughter in the second degree, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That on or about the 28th day of August, 1977, the defendant shot Randy Lou West;

(2) That the defendant's conduct was criminal negligence;

(3) That Randy Lou West died as a result of the defendant's acts; and

(4) That the acts occurred in King County, Washington.

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

INSTRUCTION No. 6

A person is criminally negligent or acts with criminal negligence when he fails to be aware of a substantial risk that a wrongful act may occur and the failure to be aware of such substantial risk constitutes a gross deviation from the standard of care that a reasonable person would exercise in the same situation.

INSTRUCTION No. 7

In your determination of whether the State has proven beyond a reasonable doubt that Mr. Stone failed to be aware of a substantial risk that a wrongful act may occur and his failure to be so aware constituted a gross deviation from the standard of care that a reasonable person would exercise in the same situation, you should view the conditions as they appeared to him at the time, and not as they might now appear to the court and jury. You should judge from his standpoint at the time of the occurrence, taking into account all facts and circumstances and background known to him.

Stone claims it was reversible error for the court to refuse to give the following instructions:

PROPOSED INSTRUCTION No. 8

Further, in your determination of whether Mr. Stone at the time acted in a fashion constituting a gross deviation from the standard of care that a reasonable person would exercise in the same situation, you are instructed that if he then believed he was in imminent danger of great bodily harm and was defending himself against such apparent danger, although afterwards it might develop that he was mistaken as to the extent of the danger, and while so doing unintentionally shot and mortally wounded Randy Lou West, he is not to be held criminally liable and should be found not guilty.

PROPOSED INSTRUCTION No. 9

The defendant had a right to be on a public street. When one is in a place where he has a right to be and is placed in danger, either real or apparent, of imminently suffering great bodily harm, he is not required to retreat or to endeavor to escape, but may stand his ground and repel force with force for the preservation of his own life or to protect himself from great bodily harm.

PROPOSED INSTRUCTION No. 10

Evidence has been presented in this case which bears upon the general reputation of Christian August Becker for being of a quarrelsome, belligerent, abusive and violent disposition. Such evidence is to be considered by you, along with all the other evidence, in determining who was the aggressor in the altercation between Becker and the defendant.

PROPOSED INSTRUCTION No. 11

Evidence has been presented that on an occasion just shortly before this incident on August 28, 1977 when Randy Lou West lost his life, that Christian August Becker made threats of violence, about which the defendant was aware. Such evidence should be considered by you in determining whether the defendant believed, and had good reason to believe, that he was in danger of great bodily harm at the time of this incident.

The refusal to give the requested instructions was not error.

■ A specific instruction should not be given when a general instruction adequately explains the law, and the parties are able to argue their theories of the case within the general instruction. *State v. Bradley,* 20 Wn. App. 340, 344, 581 P.2d 1053 (1978). Instructions Nos. 4, 5, 6 and 7

fully instructed the jury on the law of criminal negligence. Although the court's instructions did not specifically mention the various theories set forth in Stone's proposed instructions, they were sufficiently broad for Stone to argue those theories to the jury.

Stone contends that he was entitled to an instruction presenting his theory of defense which was that the gun discharged accidentally. His proposed instruction No. 8, which set forth this theory, was confusing because it combined several aspects of self–defense, which involves an *intentional* killing, *State v. Kerr,* 14 Wn. App. 584, 587, 544 P.2d 38 (1975), with a statement that the killing was *unintentional.* The court was therefore not required to give it. *State v. Alexander,* 7 Wn. App. 329, 336–37, 499 P.2d 263 (1972).

Affirmed.

SWANSON, A.C.J., and RINGOLD, J., concur.

Reconsideration denied December 19, 1979.

Review denied by Supreme Court February 22, 1980.